**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** §<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>§<br>**KENT P. WATTS, MICHAEL E. WATTS, AND** §<br>**KIRBY CALDWELL** §<br>§<br>**Defendants.** §<br>§ | Case No. 4:17-CV-00539 |

**FIRST AMENDED COMPLAINT**

Plaintiff Securities and Exchange Commission ("Plaintiff" or the "Commission") alleges as follows against Defendants Kent P. Watts, Michael E. Watts, and Kirby L. Caldwell:

**Summary**

1.      From approximately April 2013 through December 2014, brothers Kent P. Watts and Michael E. Watts carried out a fraudulent scheme to conceal the extent of their control over public company Duma Energy Corp. ("Duma"), while seeking to uplist the company's stock to a major stock exchange.  Kent controlled a private company called Hydrocarb Corporation ("HCN").  Michael controlled Duma, whose stock was quoted in the over-the-counter market.  The Watts brothers planned to merge HCN into Duma, change Duma's name to Hydrocarb Energy Corporation ("HEC"), and uplist HEC's stock to either the Nasdaq or NYSE stock exchanges.  The Watts brothers believed that such uplisting would facilitate HEC's capital raising efforts and eventually provide a market in which they could sell their shares in the company at a profit.

2.      In the course of their scheme, the Watts brothers violated the federal securities laws. Among other things, they filed untrue and misleading schedules and reports with the SEC, made untrue and misleading statements to Duma's transfer agent and outside auditors, and failed to file required reports with the SEC to disclose their Duma stock ownership. They also aided and abetted violations by Defendant Kirby L. Caldwell, Kent's nephew, who sold Duma stock through unregistered, non-exempt transactions. Ultimately, the effort to list HEC's stock on an exchange failed, and the company filed for bankruptcy in April 2016.

3.      By committing the acts alleged in this Complaint, Kent Watts violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (3)], Sections 10(b) and 13(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78(j)(b) and 78m(d)], and Exchange Act Rules 10b-5, 13a-14, 13b2-2, and 13d-1 [17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-2, and 240.13d-1], aided and abetted HEC's violations of Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) [15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B)] and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13 [17C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13], and aided and abetted Caldwell's violations of Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and (c)].

4.      By committing the acts alleged in this Complaint, Michael Watts violated, and unless restrained and enjoined will continue to violate, Securities Act Sections 17(a)(1) and17(a)(3) [15 U.S.C. §§ 77q(a)(1) and (3)], Exchange Act Sections 10(b) and 13(d) [15 U.S.C. §§ 78j(b) and 78m(d)], and Exchange Act Rules 10b-5 and 13d-1 [17C.F.R. §§ 240.10b-5 and 240.13d-1] and aided and abetted Caldwell's violations of Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and (c)].

5.     By committing the acts alleged in this Complaint, Caldwell violated, and unless restrained and enjoined will continue to violate, Securities Act Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) and (c)].

6.     In the interest of protecting the public from further violations by the Defendants, the SEC seeks, among other things, permanent injunctions and civil money penalties from each Defendant and, as to Kent Watts, an order barring him from serving as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports pursuant to Exchange Act Section 15(d) [15 U.S.C. § 78o(d)].

**Jurisdiction and Venue**

7.     This Court has jurisdiction over this action pursuant to Securities Act Sections 20(b), 20(d), and 22(a) [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Exchange Act Sections 21(d),  21(e), and 27 [15 U.S.C. §§ 78u(d), 78u(e),  and 78aa].  Defendants, directly and indirectly, made use of the mails and of the means and instrumentalities of interstate commerce in connection with the acts, practices, and courses of business described in this Complaint.

8.     Venue lies in the Southern District of Texas pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. §§ 77v(a) and 78aa].  Kent and Michael pursued a fraudulent scheme while living and working in this District.  Further, Caldwell's unregistered sales of securities occurred in this District.

**The Parties**

9.     The Commission is an agency of the United States of America charged with enforcing the federal securities laws.

10.     Defendant Kent Watts, aged 69, is a resident of Pearland, Texas.  Kent Watts is

the brother of Michael Watts.

11.     Defendant Michael Watts, aged 71, is a resident of Houston, Texas.  Michael

Watts is the brother of Kent Watts.

12.     Defendant Kirby Caldwell, aged 34, is a resident of Pearland, Texas.  Kirby is the

nephew of Kent Watts.

## STATEMENT OF FACTS

### The Watts Brothers' Companies:  Duma and HCN.

13.     Duma was incorporated in Nevada in 2005.  At all times relevant to this

complaint, it was a public company whose common stock was registered with the SEC under

Exchange Act Section 12(g) [15 U.S.C. § 78l(g)].  Its stock was quoted for sale publicly on OTC

Link, an electronic stock-quotation service for over-the-counter trading.  Under Exchange Act

Section 13(a) [15 U.S.C. § 78m(a)], Duma was required to file annual reports with the SEC on

Form 10-K, quarterly reports on Form 10-Q, and current reports on Form 8-K.  On February 18,

2014, Duma changed its name to Hydrocarb Energy Corporation ("HEC").  In this complaint,

"Duma" and "HEC" refer to the same entity.

14.     In 2013, Michael Watts and his family controlled Duma.  Michael owned 5.9% of

its stock, which he held in his name and in the name of Geoserve Marketing ("Geoserve"),

another company he owned.  Three other companies—each one owned by one of Michael's three

children—collectively owned more than 40% of Duma's stock.  Michael controlled his

children's companies, including the Duma stock held in their names.  For example, he exercised

unfettered authority to the sell—and did sell—Duma shares owned by his children's companies.

As a result, Michael controlled approximately 47% of Duma's stock.  Michael's son-in-law, who

served as Duma's President and CEO, also owned approximately 18% of Duma's stock.

15. HCN was a private Nevada corporation formed in December 2009 by Michael's brother, Kent, and Kent's business associate. Kent and his immediate family owned more than 50% of its stock. Kent's business associate owned approximately 35% of HCN. From HCN's formation through at least December 2014, Kent controlled HCN as its CEO and chairman. HCN purportedly developed oil-and-gas leases overseas.

**The Watts Brothers' Exchange-Listing Plan for Duma**

16. In April 2013, while under Michael and his family's control, Duma filed an application to have its stock listed on the Nasdaq Stock Market ("Nasdaq"), an exchange operated by the NASDAQ Stock Market LLC. Around the time this application was filed, the Watts brothers developed a plan in which Michael's company, Duma, would acquire Kent's company, HCN. On July 20, 2013, the brothers prepared a Memorandum of Understanding (the "MOU") memorializing their plan.

17. The MOU described Michael as a large shareholder of Duma and noted that Michael and HCN collectively represented "a significant amount of the share ownership of both Duma and [HCN]." The MOU further specified that, following Duma's acquisition of HCN, Michael would own approximately 47% of Duma's stock—essentially maintaining his pre-acquisition ownership percentage—while Kent and the minority HCN shareholders would own approximately 43%. Under the brothers' plan, the MOU further specified that Kent would become Duma's board chairman and that his HCN business associate, among others, would become Duma directors. The transaction was designed to increase the brothers' collective ownership in Duma, ensuring their control over the company.

18. The MOU expressed Kent and Michael's goal to get Duma's stock uplisted to a major exchange. It provided that, in addition to the earlier Nasdaq application from April 2013,

Duma would apply for its stock to be listed on the New York Stock Exchange MKT. Kent and Michael had experience uplisting a small company from the over-the-counter market to an exchange and selling their holdings in the company for a profit. In 2005, they uplisted the stock of a company they controlled, Hyperdynamics Corp., to the American Stock Exchange. Once uplisted, the Watts brothers sold their Hyperdynamics stock for tens of millions of dollars in profits. The MOU reflected the brothers' plan to duplicate their prior success with Hyperdynamics.

### Michael's Effort to Support and Stabilize Duma's Stock Price

19.     When the brothers prepared the MOU in July 2013, the Nasdaq still had not accepted Duma's April 2013 listing application. The Nasdaq's listing standards required the company to have a $15 million public float, a $50 million market capitalization, at least 300 shareholders, and a minimum closing price of $2 per share for at least five consecutive business days prior to listing approval.

20.     In 2013, Michael executed hundreds of trades in Duma's stock through his brokerage account, designed to support and stabilize Duma's share price in advance of a Nasdaq listing. Michael's trading records reveal extended periods of small buys interspersed with a few larger sales. For many of the sales, Michael sold Duma shares at a low price and purchased additional shares on the same day at a higher price.

21.     For example, on April 24, 2013, Michael began with 10 separate transactions in which he bought more than 5,000 shares; the lowest purchase price was $2.03 per share. Later that day, he sold 1,850 shares for $1.93 apiece. Following the sales, and still on April 24, Michael bought approximately 5,000 more Duma shares where the lowest share price was $2.03. He made similar trades on May 21, 2013, purchasing 100 shares at $1.97 per share, and then

selling 3,300 shares for $1.85 each. Later, he bought 2,510 shares in 7 transactions; the lowest share price was $1.94. He then sold 3,800 shares at $1.90, before placing three more buys for a total of 2,400 shares, the lowest share price being $1.95.

**The Caldwell Sham Stock Transaction**

22.     In keeping with the Watts brothers' MOU, Duma acquired HCN on December 9, 2013, under a share-exchange agreement dated November 27, 2013. Prior to the acquisition, HCN received at least 2,434,879 shares of Duma stock, obtaining 575,000 shares from Michael's children's companies in August 2012 and 1,859,879 ("1.8 million") shares directly from Duma in October 2013. With the planned HCN acquisition looming, however, Kent realized that any Duma stock held by HCN would become Duma treasury stock once Duma acquired HCN. He knew that, if this stock became treasury stock, it would be unavailable for use by Michael and Kent.

23.     To prevent the shares from reverting to Duma's treasury, Kent orchestrated a sham stock transaction to "park" 575,000 of HCN's Duma shares with his nephew, Kirby Caldwell. In September 2013, at Kent's direction, HCN sold Caldwell 575,000 purportedly "free-trading" Duma shares in exchange for a $1 million interest-free promissory note (the "Caldwell Note"). The sham transaction created the false appearance that HCN did not own the Duma shares when Duma acquired HCN in December 2013, and thus did not become part of Duma's treasury stock.

24.     Despite the so-called stock sale to Caldwell, the 575,000 Duma shares remained under Kent's control. Kent designated Caldwell as a straw-man buyer because Kent knew he could control Caldwell, who was an HCN employee and also Kent's nephew. Kent created the Caldwell Note, knowing that Caldwell could not pay it back and never intending that Caldwell

would pay it back.  In fact, Caldwell's assets and income were grossly insufficient to pay the Caldwell Note's $1 million principal within any reasonable period.  Moreover, the Caldwell Note was interest-free, and the transaction did not require Caldwell to provide any collateral for the Caldwell Note other than the shares themselves.  The Caldwell Note was simply a fiction, which served as a fraudulent device to conceal Kent's actual control over the 575,000 shares and to protect them against reverting to Duma treasury stock in order to ensure the Watts brothers could later sell them for their own profit.

25.     In January 2014, Caldwell sold 3,300 of the shares through transactions in the public market.  No registration statement was filed with the SEC as to these transactions.  And the sales did not satisfy the safe-harbor requirements of Securities Act Rule 144 [17 CFR § 230.144]:  First, the shares were restricted under Rule 144(a)(3)(i) because Caldwell acquired them directly from HCN, an affiliate of Duma.  Caldwell, HCN, and Duma were under Kent and Michael's collective control and, therefore, were all affiliates of one another.  Second, Caldwell sold the shares before Rule 144(d)'s six-month holding period had passed.

26.     Kent and Michael knew the Caldwell Note transaction was a sham.  Kent approached Caldwell with the idea of the "sale," and Kent drafted the Caldwell Note for the transaction.  Kent also signed the Caldwell Note and transferred the shares to Caldwell.  Kent regularly discussed with Michael "working" the Caldwell shares to generate income for Duma.  Michael assisted Caldwell in finding a brokerage account in which to deposit the shares.  Neither Kent nor Michael took steps to ensure that Caldwell refrained from selling the shares on the open market within six months of the purported "sale" to Caldwell, as required by Rule 144.  Kent and Michael therefore knowingly provided substantial assistance to Caldwell in selling the shares in unregistered transactions.

**Kent Filed an Untrue and Misleading Schedule 13D with the SEC**

27.    Exchange Act Section 13(d) requires certain reporting to alert investors to potential changes in a company's corporate control so that they can properly evaluate investment decisions about a company's stock.  Once a person acquires more than 5% of an issuer's stock, the individual is required to file a Schedule 13D with the SEC to report those holdings.

28.    When HCN received the 1.8 million shares from Duma in October 2013, HCN held 12.3% of Duma's shares.  HCN was therefore obligated to file a Schedule 13D with the SEC, which it did on November 6, 2013.  Kent signed the document on behalf of HCN.  At the time, he had been appointed Duma's chairman of the board

29.    The Schedule 13D stated that neither HCN nor Kent "has any current plans or proposals that relate to or would result in" any of the following:

- "the acquisition by any person of additional securities of the Issuer, or the disposition of securities of the Issuer";

- "any extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the Issuer or any of its subsidiaries";

- "any change in the present board of directors or management of the Issuer, including any plans or proposals to change the number or term of directors or to fill any existing vacancies on the board"; [or]

- "changes in the Issuer's charter, bylaws or instruments corresponding thereto or other actions which may impede acquisition of control of the Issuer by any person[.]"

30.    Each of the statements from the Schedule 13D quoted in paragraph 29, above, was an untrue statement of a material fact.  A reasonable investor would consider the information in each statement important in making an investment decision about transactions in Duma securities.  In reality—as reflected in the MOU—Kent, Michael, and HCN had a plan to "affect the acquisition by Duma of 100% of the outstanding common stock of" HCN.  Under this plan,

the MOU specified that Duma would be required to effect a "total issuance of ~46,510,063 new common stock shares," of which Michael was to receive "22,410,000 shares" and Kent and HCN's other shareholders would receive "24,100,063 shares." The plan provided that "Series A Preferred stock will [be] designated and issued to Kent Watts." It further included recruiting "two new independent directors to begin service upon the closing of the acquisition" and removing Michael's son-in-law as Duma's CEO and appointing Kent's HCN co-founder in his place. Finally, the plan provided that Michael's company, Geoserve, would "receive a consulting contract" from Duma and that "the name of the company will be changed with the State of Nevada to Hydrocarb Energy Corporation."

31.     When he filed the Schedule 13D, Kent knew or was severely reckless in not knowing that the quoted statements in paragraph 29, above, were untrue. He knew that his plan with Michael directly contradicted his statements in the 13D, as set forth in paragraphs 29 and **30**, above. Moreover, within just four weeks of Kent's filing the false 13D—and while he was serving as Duma's board chairman—Duma filed a Form 8-K with the SEC announcing the HCN acquisition, as follows :

> We entered into a Stock Exchange Agreement (the "Agreement") dated as of November 27, 2013 by and among Duma Energy Corp., a Nevada corporation ("DUMA"), Hydrocarb Corporation, a Nevada corporation ("HCN"), the holders of 100% of the shares of common stock and preferred stock of HCN (the "SELLERS"), and the holders of rights to acquire DUMA common stock (the "RIGHTS HOLDERS"). This transaction will make HCN a wholly-owned subsidiary of DUMA.

**Michael Concealed His Ownership of Duma Stock**

32.     Michael beneficially owned Duma stock in his name and in the name of his company, Geoserve Marketing ("Geoserve"). As of December 30, 2013, he beneficially owned 3,703,750 shares, representing 5.9% of Duma's 62,740,882 outstanding shares. As a holder of

5% or more of Duma's shares, Michael was obligated to file his own 13D to disclose his ownership. But he never did, thus concealing the magnitude of his Duma stock ownership—itself a material fact.

**The SMDRE Sham Stock Transaction**

33. Like the Caldwell shares, Kent had to find a way to divest HCN's remaining 1.8 million Duma shares to prevent them from reverting to Duma's treasury when Duma acquired HCN. For this purpose, he turned to SMDRE, LLC, a Texas company owned and controlled by Michael. Just days before Duma acquired HCN, HCN transferred the 1.8 million Duma shares to SMDRE in exchange for a $1,859,879 non-interest-bearing, unsecured note ("SMDRE Note"). This sham transaction created the false appearance that the 1.8 million shares had left HCN's control by the time Duma acquired HCN in December 2013 and that the shares had not become part of Duma's treasury stock. In reality, the shares remained under Duma's control at the HCN acquisition, by virtue of Kent and Michael's collective control over Duma, HCN, and SMDRE.

34. Like the Caldwell transaction, Kent and Michael knew the SMDRE transaction was a sham. Before the SMDRE transaction, Michael filed a document with the Texas Secretary of State, reporting that another company he wholly owned, Lifestream LLC, had relinquished 51% of its 100% SMDRE stake to a third party. Michael's purported reduction in ownership was designed to convey the false impression that SMDRE was not under Michael's control when it acquired the 1.8 million shares. The Watts brothers concocted these SMDRE transactions to both maintain and conceal their control over the shares in anticipation of their eventual sale into the market.

**Sham Payment on the Caldwell Note**

35. On February 18, 2014, after Duma acquired HCN, Duma officially changed its

name to "Hydrocarb Energy Corporation."  Now known as HEC, the company was experiencing

low cash flow.  Kent and Michael, along with HEC's officers, discussed the need to inject cash

into HEC to maintain its domestic oil-and-gas operations, which served as its only source of

income.  Kent was also concerned that HEC's auditor, MaloneBailey LLP, would label HEC a

going-concern risk in its audit report, an indication that HEC risked going out of business over

the next twelve months.  Kent understood that, if MaloneBailey raised a going-concern risk, then

HEC's share price would likely fall, jeopardizing the brothers' uplisting plan.

36.     To inject capital into HEC, Kent concocted a plan to create the false appearance

that Caldwell had repaid a large portion of the Caldwell Note.  Kent knew that Caldwell did not

have the money to repay the Caldwell Note, and had never intended for, or expected, Caldwell to

repay it.  And he did not want Caldwell to sell a large amount of the shares into the market,

believing such a large sale would drive down HEC's stock price.  So Kent gave Caldwell

$400,000 and instructed him to pay HEC $375,000 of it on the Caldwell Note, which Caldwell

immediately did.

37.     Because the Caldwell Note was itself a sham, Caldwell's payment on the

Caldwell Note was simply a ruse designed by Kent to conceal his cash infusion into HEC.  This

secret cash infusion created the false appearance that the company had collected on the otherwise

uncollectible Caldwell Note.

**Untrue and Misleading Statements in SEC Reports**

38.     In Duma's Form 10-K annual report filed on November 12, 2013, for Duma's

fiscal year ended July 31, 2013, under the heading "Changes in Control," the company stated,

"We are unaware of any contract, or other arrangement or provision, the operation of which may

at a subsequent date result in a change of control of our company."  This was an untrue statement

of a material fact—the very control of the issuer. Kent signed the 10-K, knowing that his MOU with Michael provided for the addition of directors to Duma's board and for the removal of Duma's CEO.

39. In its Form 10-Q quarterly report for the quarter ended January 31, 2014, filed with the SEC on March 21, 2014, HEC disclosed the HCN stock transaction with Caldwell as follows:

> In September 2013, before the HEC acquisition of HCN, HCN sold 575,000 shares of HEC common stock to a related party for $1,000,000 note receivable. We collected $375,000 on this note receivable subsequent to January 31, 2014, but before issuance of these financials and this amount is classified within current assets. The remaining amount of $625,000 receivable is classified as a receivable for common stock within equity at January 31, 2014.

40. This quoted language from the 10-Q contained untrue statements of material facts. As described above, the Caldwell Note was a sham. In reality, HEC collected nothing on the Caldwell Note. It simply received a $375,000 payment from Kent. This money passed through Caldwell's hands under the false pretext that Caldwell was making payment to HEC on the Caldwell Note. Because the Caldwell Note was fake, its classification as an HEC receivable was an untrue statement of a material fact. A reasonable investor would consider Kent's control over the 575,000 shares, his creation of the fake Caldwell Note to conceal that control, and the booking of the $1 million fake note as a receivable in HEC's financial statements important information in making an investment decision about transactions in HEC securities.

41. The 10-Q was also misleading because it omitted to disclose the following material facts: (1) that Caldwell was Kent's nephew; (2) that Kent retained control over the 575,000 shares; and (3) that Kent, the company's chairman, was the source of the $375,000 payment purportedly made on the Caldwell Note. Because the 10-Q omitted to disclose these material facts, the statement quoted in paragraph 39, above, was misleading.

42.     The 10-Q also contained a statement referring to the 1.8 million shares that SMDRE received from HCN, as follows:  "Prior to HEC's acquisition of HCN, HCN sold these shares to an unrelated entity for a note receivable of $1,859,879."  This was an untrue statement of a material fact.  SMDRE was a related party to both HCN and HEC.  Kent and Michael collectively controlled SMDRE, HCN, and HEC.  The three entities were therefore related as affiliates.  In addition, the 10-Q omitted to disclose the material fact that the Watts brothers continued to control the SMDRE shares, falsely stating instead that "the shares are not retrievable by the Company."

43.     HEC's Form 10-Q for the quarter ended April 30, 2014, filed with the SEC on June 16, 2014, contained untrue and misleading statements regarding the Caldwell Note and SMDRE  transactions virtually identical to those identified, above, in the 10-Q filed on March 21, 2014.

44.     HEC's Form 10-Q for the quarter ended October 31, 2014, filed on December 15, 2014, contained the untrue statements that the fake Caldwell Note was a "note receivable" on which HEC had "collected $675,000."  And it contained untrue statements regarding the SMDRE transaction virtually identical to those in the 10-Q filed on March 21, 2014.

45.     HEC's Form 10-K annual report for the period ended July 31, 2014, filed on November 13, 2014, likewise repeated the untrue statements that the Caldwell Note was an HEC receivable and that the SMDRE transaction involved "unrelated entity."

46.     Kent signed both of the 10-Ks described above as HEC's board chairman.  And he signed the 10-Q filed on December 15, 2014.  Although he did not sign the two other 10-Qs described above, as board chairman—and by virtue of his actual control over HEC—Kent exercised control over all of HEC's SEC filings.  When he signed or otherwise permitted these

reports to be filed with the SEC, he knew that they contained the untrue and misleading statements described above. Therefore, Kent knowingly provided substantial assistance to HEC in making untrue and misleading statements of material fact.

### Failure to Comply with "GAAP" as to Related-Party Disclosures

47. Under Generally Accepted Accounting Principles ("GAAP"), HEC had an obligation to disclose material related-party transactions in the financial statements it included in its 10-K and 10-Q reports. Financial Accounting Standards Board Accounting Standards Codification Topic 850 ("ASC 850") provides that financial statements shall include disclosures of material related-party transactions. Moreover, Item 404(a) of Regulation S-K [17 CFR § 229.404(a)], the instructions for filing Exchange Act forms, requires a description of transactions exceeding $120,000 in which the company is a party and in which a director or executive officer or any immediate family member has a direct or indirect material interest.

48. The HEC 10-Qs, described above, and its 10-K filed on November 13, 2014, failed to comply with GAAP and Regulation S-K 404(a) because they omitted to disclose the following material facts: (1) that Kent retained control over the 575,000 shares; and (2) that the payments HEC purportedly received on the Caldwell Note were, in fact, transactions between HEC and its chairman, Kent; and (3) that SMDRE, an entity controlled by Michael Watts, received the 1.8 million shares.

### Kent Falsely Certified HEC's Public Filings

49. Kent signed a certification for HEC's 10-Q filed on December 15, 2014, and for its 10-K filed on November 13, 2014. These certifications contained the following statements:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]

Based on my knowledge, the consolidated financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in the report[.]

50. These certifications were false. The reports contained untrue and misleading statements of material facts, including false financial information. Kent knew that the reports falsely stated that the SMDRE transaction involved an "unrelated entity" and that Caldwell Note was an HEC "note receivable."

**Misleading Statements to HEC's Auditors**

51. As mentioned above, at all relevant times, HEC's financial statements were audited by MaloneBailey. Kent misled MaloneBailey with respect to the Caldwell transactions by failing to tell MaloneBailey the material fact that Caldwell was his nephew. Moreover, Kent did not disclose to MaloneBailey the material facts that he provided Caldwell $400,000 and that, at Kent's direction, Caldwell used $375,000 of those funds to pay down the Caldwell Note.

52. Kent also misled MaloneBailey with respect to the SMDRE transaction by failing to disclose to MaloneBailey the material fact that Kent and Michael collectively controlled SMDRE, HCN, and HEC. Michael and Kent also made untrue statements to HEC's auditors by claiming that Michael was "no longer involved" with SMDRE. As a result, they prevented MaloneBailey from discovering that HEC's books, records, and SEC filings inaccurately described the Caldwell Note and SMDRE transactions, as described above.

**Michael Made Untrue Statements to HEC's Transfer Agent**

53. In September 2013, when HEC was known as Duma, Michael requested the company's transfer agent to remove the restrictive legend from 186,750 Duma shares owned by Michael's company, Geoserve. As part of the request, Michael attested in writing that he was

not an affiliate of Duma. This statement was an untrue statement of a material fact. In reality, Michael controlled considerably more than 10% of Duma's outstanding stock, by virtue of his control of his children's companies' shares and his share ownership, personally and through Geoserve. Therefore, Michael was an affiliate of Duma. Based on this misrepresentation, the transfer agent removed the legends and transferred the now purportedly unrestricted shares to Michael's brokerage account.

54.     In March 2014, Michael asked the transfer agent to remove the restrictive legend on another 82,750 HEC shares owned by Michael personally, so he could transfer them to a third party. Michael gave the transfer agent an affidavit falsely asserting that he did not beneficially own or control any of the HEC shares held in the name of his children's companies. The transfer agent removed the restrictive legends and transferred Michael's shares based upon his misrepresentations.

**HEC Makes Misleading Disclosures about Board Resignations**

55.     By July 2014, Kent had become HEC's executive chairman. HEC's board of directors was dissatisfied with Kent's performance in that role. At the time, HEC had five directors. Three of them wanted Kent to resign his position at the company. These directors believed the Watts family's majority ownership of HEC shares made outside investment more unlikely. And they had lost confidence in Kent's leadership because he failed to uplist HEC's stock to an exchange.

56.     HEC's board met telephonically on July 18, 2014. Kent participated from the company's headquarters. Believing he had the necessary three votes, a director made a motion to remove Kent from the board and from his post as executive chairman. Before a vote could be held, however, Kent produced a document purporting to be a written consent by HEC's majority

shareholders, giving Kent total decision-making authority over HEC as its executive chairman. The director countered by moving to amend the bylaws to remove the majority-shareholder amendment powers.

57.     Kent refused to allow a vote on the amendment proposal and, thereafter, refused to permit the board to vote or to take any action contrary to his wishes.  In disagreement with Kent's position, three board members resigned.

58.     Item 5.02(a) of Form 8-K requires disclosure when a board member resigns because of a disagreement with the company that is known to an executive officer, on any matter relating to the company's operations, policies, or practices.  In such an event, the company must provide, among other things, "a brief description of the circumstances that the registrant believes caused, in whole or in part, the director's resignation."

59.     HEC filed a Form 8-K with the SEC on July 24, 2014, to disclose the director resignations.  But it omitted to disclose that the directors resigned over their disagreement with Kent's total decision-making authority and his refusal to allow a board vote to change the situation.  As a party to the disagreement with the board members, Kent knew the disagreement precipitated their resignations.  But he permitted HEC to file the 8-K without the required description of the circumstances under which they resigned.  Therefore, Kent knowingly provided substantial assistance to HEC in failing to provided required information in the 8-K.

## FIRST CLAIM FOR RELIEF

### Violations of the Antifraud Provisions of the Securities Act
### Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) & (3)]

### [Against Defendants Kent Watts and Michael Watts]

60.     The Commission repeats and re-alleges Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

61.     By engaging in the conduct described above, Kent Watts and Michael Watts, directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or with severe recklessness, employed devices, schemes, or artifices to defraud, in violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

62.     By engaging in the conduct described above, Kent Watts and Michael Watts, directly or indirectly, singly or in concert, in the offer or sale of securities, by use of the means or instrumentalities of interstate commerce or of the mails, and at least negligently, engaged in transactions, practices, and courses of business which operated or would operate as a fraud or deceit upon purchasers, prospective purchasers, and other persons, in violation of Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a) (3)].

63.     By engaging in this conduct, Kent Watts and Michael Watts violated, and unless enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

## SECOND CLAIM FOR RELIEF

### Violations of the Antifraud Provisions of the Exchange Act
### Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5]

### [Against Defendants Kent Watts and Michael Watts]

64.     The Commission repeats and re-alleges Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

65.     By engaging in the conduct described above, Kent Watts and Michael Watts, in connection with the purchase or sale of securities, by use of means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly: (i) employed devices, schemes, or artifices to defraud; (ii) made untrue

statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaged in acts, practices, and courses of business which operate as a fraud or deceit upon persons, including purchasers or sellers of securities, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

66.     Kent Watts and Michael Watts engaged in the above-referenced conduct knowingly or with severe recklessness.

67.     By engaging in this conduct, Kent Watts and Michael Watts violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

### Violations of the Securities Registration Provisions of the Securities Act
### Sections 5(a) and 5(c) [15 U.S.C. §§ 77e(a) & (c)]

### [Against Defendant Kirby Caldwell;
### aided-and-abetted by Defendants Kent Watts and Michael Watts]

68.     The Commission repeats and re-alleges Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

69.     By the conduct alleged above, Caldwell, directly or indirectly, singly or in concert with others, (i) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of written contracts, offering documents, or otherwise, securities as to which no registration statement was in effect; and (ii) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of written contracts, offering documents, or otherwise, securities as to which no registration statement had been filed.

70.     By engaging in this conduct, Caldwell has violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(1) and (c)].

71.     By engaging in the conduct described above, Kent Watts and Michael Watts knowingly or with severe recklessness provided substantial assistance to and, thereby, aided and abetted, pursuant to Section 20(e) of the Exchange Act, Caldwell's (i) use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of written contracts, offering documents, or otherwise, securities as to which no registration statement was in effect; and (ii) use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of written contracts, offering documents, or otherwise, securities as to which no registration statement had been filed.

72.     By engaging in this conduct, Kent Watts and Michael Watts knowingly or severely recklessly provided substantial assistance to Caldwell and, thereby, aided and abetted, and unless enjoined will continue to aid-and-abet, violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(1) and (c)].

### FOURTH CLAIM FOR RELIEF

**Violations of Certification Rules of the Exchange Act**
**Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14]**

**[Against Defendant Kent Watts]**

73.     The Commission repeats and re-alleges Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

74.     Kent Watts personally certified that he reviewed HEC's 10-Q filed on December 15, 2014, and its 10-K filed on November 13, 2014, which contained financial statements filed with the Commission pursuant to Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and

that, based on his knowledge, (a) these reports did not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the report; and (b) that information contained in these reports fairly present, in all material respects, the financial condition and results of the issuer's operations.

75.     At the times that Kent Watts signed and issued those certifications, he knew or was severely reckless in not knowing that the reports he certified contained untrue statements of material facts and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

76.     By reason of the foregoing, Kent Watts violated and, unless enjoined will continue to violate, Exchange Act Rule 13a-14 [17C.F.R. § 240.13a-14] promulgated under Section 302 of the Sarbanes-Oxley Act of 2002.

## FIFTH CLAIM FOR RELIEF

### Violations of the Reporting Provisions of the Exchange Act
### Section 13(a), and Rules 12b-20, 13a-1, 13a-11, and 13a-13

### [Defendant Kent Watts aided-and-abetted violations by HEC]

77.     The Commission repeats and re-alleges Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

78.     Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Exchange Act Rules 13a-1, 13a-11, and 13a-13 [17 C.F.R. §§ 240.13a-1, 240.13a-11, and 240.13a-13], require issuers of registered securities to file with the Commission factually accurate current, quarterly, and annual reports.  Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20] further provides that, in addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required

statements, in the light of the circumstances under which they were made not misleading.

79.     By reason of the foregoing, HEC committed violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13 [15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 13a-13].  By engaging in the foregoing misconduct, HEC, whose securities are registered pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l], failed to file annual, quarterly, and periodic reports (on Forms 10-K, 10-Q, and 8-K) with the Commission that were true and correct, and failed to include material information in its required statements and reports as was necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

80.     Kent Watts, pursuant to Section 20(e) of the Exchange Act, knowingly or recklessly provided substantial assistance to HEC in its violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

81.     By reason of the foregoing, Kent Watts aided and abetted HEC's violations, and unless enjoined will continue to aid and abet such violations, of Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13 [15 U.S.C. § 78m(a); 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 13a-13].

### SIXTH CLAIM FOR RELIEF

**Violations of the Books and Records and Internal Controls Provisions of the Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]**

**[Defendant Kent Watts aided and abetted violations by HEC]**

82.     The Commission repeats and re-alleges Paragraphs 1 through 59 of this Complaint, as if fully set forth herein..

83.     Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] requires

issuers to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of its assets. Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)] requires issuers to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain the accountability of assets.

84.     By engaging in the conduct described above, HEC, whose securities are registered pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78l(g)]:

      a.    failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and disposition of its assets; and

      b.    failed to devise and maintain a system of internal controls sufficient to provide reasonable assurances that: (i) transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP or any other criteria applicable to such statements, and (ii) to maintain accountability of assets.

85.     As a result of the foregoing misconduct, HEC violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78(m)(b)(2)(B)].

86.     Kent Watts knowingly or recklessly provided substantial assistance to HEC in its failure to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of HEC.

87.     By reason of the foregoing, Kent Watts aided and abetted, pursuant to Section 20(e) of the Exchange Act, HEC's violations, and unless enjoined will continue to aid and abet such violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

88.     Kent Watts knowingly or recklessly provided substantial assistance to HEC in its failure to devise and maintain a sufficient system of internal accounting controls.

89.     By reason of the foregoing, Kent Watts aided and abetted, pursuant to Section 20(e) of the Exchange Act, HEC's violations, and unless enjoined will continue to aid and abet such violations, of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

## SEVENTH CLAIM FOR RELIEF

### Misrepresentations and Misconduct in Connection with the Preparation of Required Reports
### Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2]

### [Against Defendant Kent Watts]

90.     The Commission repeats and re-alleges Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

91.     By engaging in the foregoing misconduct, Kent Watts, an officer of HEC, violated Exchange Act Rule 13b2-2(a) [17 C.F.R. § 240.13b2-2(a)] by, directly or indirectly, making, or causing to be made, materially false or misleading statements, or omitting to state, or causing another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with (i) an audit, review, or examination of the financial statements of Defendant required to be made pursuant to Commission rules, or (ii) the preparation or filing of documents or reports required to be filed with the Commission.

92.     By engaging in the foregoing misconduct, Kent Watts, an officer of HEC, violated Exchange Act Rule 13b2-2(b) [17 C.F.R. § 240.13b2-2(b)] by directly or indirectly taking action, or directing another to take action, to coerce, manipulate, mislead, or fraudulently influence an independent public or certified public accountant engaged in the performance of an audit or review of the financial statements of HEC required to be filed with the Commission while he knew or should have known that such action(s), if successful, could result in rendering

HEC's financial statements materially misleading.

93.     As a result of his conduct, Kent Watts violated, and unless enjoined will continue to violate, Exchange Act Rules 13b2-2(a) and 13b2-2(b) [17 C.F.R. § 240.13b2-2].

## EIGHTH CLAIM FOR RELIEF

### Violations of the Ownership Reporting Requirements of the Exchange Act
### Exchange Act Section 13(d) and Rule 13d-1

### [Against Defendants Kent Watts and Michael Watts]

94.     The Commission repeats and re-alleges Paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

95.     HEC's common stock is registered pursuant to Section 12 of the Exchange Act and is quoted on the OTC marketplace.

96.     Section 13(d)(1) of the Exchange Act and Rule 13d-1 thereunder together require any person who acquires, directly or indirectly, beneficial ownership of more than 5% of a class of equity securities registered pursuant to Section 12 of the Exchange Act to file a public disclosure statement with the Commission.

97.     Kent Watts was under an obligation to file with the Commission true and accurate reports with respect to HCN's ownership of 5% or more of HEC securities, pursuant to Exchange Act Section 13(d) and Rule 13d-1 thereunder.  On October 13, 2013, Kent Watts signed and filed a Schedule 13D on behalf of HCN.  HCN's Schedule 13D was untrue and materially misleading, because HCN falsely disclaimed knowledge of:  (a) HEC's impending acquisition of HCN, (b) changes to the management and Board of HEC, and (c) the acquisition by any person of additional HEC securities.

98.     By reason of the foregoing, Kent Watts violated, and unless enjoined will continue to violate, Section 13(d) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13d-l

thereunder [17 C.F.R. 240.13d-1].

99. Michael Watts owned HEC shares in his own name and in the name of his private company, Geoserve. As of December 30, 2013, Michael Watts and Geoserve held more than 5% of HEC's outstanding shares. However, Michael Watts failed to file a Schedule 13D, as required by Section 13(d) of the Exchange Act and Rule 13d-1 thereunder.

100. By reason of the foregoing, Michael Watts violated, and unless enjoined will continue to violate, Section 13(d) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13d-l thereunder [17 C.F.R. 240.13d-1].

## PRAYER FOR RELIEF

For these reasons, the Commission respectfully asks the Court to enter a final judgment:

1. Permanently enjoining Kent Watts from:

    a. Violating Sections 17(a)(1) and 17(a)(3) of the Securities Act, Sections 10(b) and 13(d) of the Exchange Act, and Exchange Act Rules 10b-5, 13a-14, 13b2-2, and 13d-1; and

    b. Aiding and abetting violations of Securities Act Sections 5(a) and 5(c), Exchange Act Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B), and Exchange Act Rules 12b-20, 13a-1, 13a-11, and 13a-13.

2. Permanently enjoining Michael Watts from:

    a. Violating Sections 17(a)(1) and 17(a)(3) of the Securities Act, Sections 10(b) and 13(d) of the Exchange Act, and Exchange Act Rules 10b-5 and 13d-1; and

    b. Aiding and abetting violations of Securities Act Sections 5(a) and 5(c);

3. Permanently enjoining Caldwell from violating Sections 5(a) and 5(c) of the Securities Act;

4. Ordering Defendants Kent Watts and Michael Watts to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act

[15 U.S.C. § 78u(d)];

5. Ordering Defendant Kirby Caldwell to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)];

6. Ordering that Defendant Kent Watts is barred, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], from serving as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d); and

7. Granting such additional relief as the Court deems just, appropriate, and equitable.

Dated: June 9, 2017

Respectfully submitted,

s/Timothy S. McCole
TIMOTHY S. McCOLE
Attorney-in-Charge
Mississippi Bar No. 10628
S.D. Tex. Bar No. 37943
United States Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, 18th Floor
Fort Worth, TX 76102-6882
Phone: (817) 978-6453
Fax: (817) 978-4927
*McColeT@sec.gov*
ATTORNEY FOR PLAINTIFF